UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Danisco USA Inc., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>Lifeway Foods, Inc.,<br><br>    Defendant. | Case No. 1:11-cv-06035<br><br>Judge John W. Darrah |

## LIFEWAY FOODS, INC.'S MOTION TO DISMISS

Lifeway Foods, Inc. ("Lifeway") moves under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of Danisco USA Inc., the North Carolina Agricultural Foundation, Inc., and Fonterra TM Limited Co. (collectively, "Danisco") because it fails to state a claim upon which relief can be granted and because Danisco lacks standing to assert false advertising claims against a non-competitor, Lifeway.

## BACKGROUND

Lifeway makes and sells "kefir" which is a fermented milk beverage that is sold as "Lifeway Kefir." Lifeway Kefir includes 10 probiotic culture ingredients that enhance the immune system and balance digestive health. Recently, Lifeway purchased from Danisco, a non-competitor who sells probiotics cultures, two additional probiotic cultures (HN019 and NCFM) to add to its kefir for a total of 12 probiotics. After that purchase, Danisco demanded that Lifeway purchase greater quantities of its probiotics but Lifeway refused to do so. Instead,

{2957320:2}

Lifeway has chosen to sell off its remaining inventory of Lifeway Kefir with Danisco's two additional probiotics and return to its original 10-probiotic recipe.[1] With no contract or promise to rely on to serve as a basis to sue Lifeway or to compel it to buy more product, Danisco has hatched a more aggressive strategy: use creative pleading to convert a non-actionable, contract-based gripe into unsupported claims for false advertising and trademark infringement. But that plan fails because Danisco's square gripe does not fit those round holes.

Danisco cannot sue Lifeway for false advertising because, as a matter of law, only direct competitors have standing to assert such claims. Danisco's own allegations admit that it does not directly compete with Lifeway in the kefir marketplace because it sells probiotic ingredients that Lifeway and other food makers use to make end products.

Danisco also cannot sue Lifeway for using the allegedly trademarked names of Danisco's probiotic ingredients (HN019 and NCFM) because, as Danisco admits, Lifeway lawfully purchased those two probiotic ingredients directly from Danisco. Under the first sale doctrine, by lawfully purchasing those probiotics from Danisco, Lifeway has the right to use their trademarked names to truthfully identify them as ingredients in its Lifeway Kefir. That commonsense right is the reason sellers of lawfully purchased goods are not sued when they use trademarked names to advertise and sell IPOD® music players and FORD® cars on e-bay, in classified ads, in catalogs, and in used car lots. Therefore, the Court should grant Lifeway's motion to dismiss.

---

[1] Although Danisco's complaint is silent about the other non-Danisco probiotics used in Lifeway Kefir, the packaging for that product identifies 10 probiotic ingredients in addition to Danisco's HN019 and NCFM. The Court may consider that packaging, which is attached as **Exhibit A**, because Danisco bases its complaint upon that packaging but did not attach a copy to its complaint. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," and they "may be considered by a district court in ruling on the motion to dismiss.").

**STATEMENT OF FACTS**

I. **The Parties**

Plaintiff Danisco USA Inc. is a Missouri corporation and is headquartered in Kansas. (Compl. ¶ 1.) Plaintiff The North Carolina Agricultural Foundation, Inc. ("NCAF") is a non-profit corporation located at North Carolina State University in Raleigh, North Carolina. (*Id*. ¶ 2.) Plaintiff Fonterra TM Ltd. Co. ("Fonterra") is a New Zealand limited company with a principal place of business in Auckland, New Zealand. (*Id.* ¶ 3.)

Defendant Lifeway Foods, Inc. is an Illinois corporation and is headquartered in Illinois.

II. **Danisco's Allegations**

According to Danisco, it sells "food ingredients, enzymes and bio-based solutions, including probiotics." (Compl. ¶ 8.) Danisco describes probiotics as "health-enhancing bacteria that are widely used in food and beverage products and in dietary supplements." (*Id.*)

The complaint says little about NCAF or Fonterra, other than alleging that NCAF owns the "NCFM" trademark and that Fonterra owns the "HN019" trademark. (Compl. ¶¶ 17-18, 20.) NCAF and Fonterra have allegedly granted Danisco exclusive or co-exclusive licenses to the NCFM and HN019 marks. (*Id.*) Danisco alleges that the NCFM mark is used for the "*Lactobacillus acidophilus*" probiotic strain and that HN019 applies to the "*Bifidobacterium lactis*" probiotic strain. (*Id.* ¶¶ 10-11.) Danisco claims to market both probiotic strains under the registered "HOWARU" trademark. (*Id.* ¶ 9.)

Danisco alleges that "Lifeway is in the business of selling probiotic food products, particularly kefir, a milk-based cultured drink." (Compl. ¶ 22.) Kefir, which has a consistency and taste similar to yogurt, is a fermented milk beverage made by combining milk, fermenting

kefir grains, and other ingredients and additives (such as sweeteners, probiotics, and natural flavorings). (*See* **Ex. A**.)

Lifeway lawfully purchased the NCFM and HN019 probiotic strains from Danisco to use them (along with 10 other probiotics) as ingredients in Lifeway Kefir. (Compl. ¶ 25.) Without identifying any contractual basis, Danisco claims that Lifeway must use a certain minimum amount of NCFM and HN019 in its kefir. (*Id*. ¶¶ 24-26.) When Lifeway allegedly declined to purchase NCFM and HN019 at the higher quantities demanded by Danisco, and without any contractual basis to force Lifeway to do so, it sued on the legally meritless grounds Lifeway now seeks to dismiss.

### III. Danisco's Causes Of Action

Without any contract-based claims to compel Lifeway to buy more probiotics, Danisco has asserted two intellectual property claims against Lifeway: false advertising and trademark infringement. Danisco asserts false advertising claims under: (1) the Lanham Act, 15 U.S.C. § 1125(a) (Compl. ¶ 33); (2) the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 ("IUDTPA") (i*d.* ¶ 41); and (3) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ("ICFA") (s*ee id.* "Second Claim for Relief").

Danisco bases its false advertising claims upon the following statements allegedly made by Lifeway:

- "Published research has shown the healthy Probiotic cultures found in Lifeway Kefir may:

  Enhance the immune system
  Balance digestive health"

- "Lifeway's ProBoost contains *Lactobacillus acidophilus* NCFM and *Bifidobacterium lactis* HN109; 2 powerful probiotic strains clinically shown to support digestive health and enhance immunity."

{2957320:2} 4

- "We call this exclusive blend of probiotics "ProBoost™", because the cultures it contains have been clinically proven to support immunity and enhance digestion, as well as boost your well-being in several ways."

(Compl. ¶ 27.) Danisco argues that because Lifeway Kefir does not contain a certain amount of Danisco's NCFM and HN019 probiotics it is somehow false to tell the public that Lifeway Kefir has health benefits. (*See id*. ¶ 34.)

Danisco also asserts trademark infringement under the Lanham Act, the IUDTPA, and the ICFA. (Compl. ¶¶ 34, 41, "Second Claim for Relief".) Danisco alleges that Lifeway infringed Danisco's trademarks because Lifeway's "product packaging and/or marketing materials, including www.lifeway.net, features the HOWARU, NCFM, and HN019 marks without [Danisco's] consent or authorization in a manner that suggests Plaintiffs have manufactured, marketed, approved, licensed, sponsored, endorsed, or guaranteed the Lifeway Kefir." (*Id.*. ¶ 29.) As explained below, both sets of claims are devoid of legal merit and should be dismissed.

## LAW AND ARGUMENT

**I.     A Complaint Must Allege Enough Facts To State A Claim**

A motion to dismiss tests the legal sufficiency of a complaint based upon the pleaded facts. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court must dismiss an action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A plaintiff states a plausible claim only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.*

While the court presumes at the pleading stage that factual allegations are true, it will not apply a presumption of truth to conclusory allegations, legal conclusions couched as factual allegations, or implausible inferences. *See Iqbal*, 129 S.Ct. at 1949-51; *see also Twombly*, 127 S.Ct. at 1964-65. The pleading must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50.

## II. <u>Danisco Has No Standing To Sue Lifeway For False Advertising</u>

Danisco fails to state a claim for false advertising against Lifeway because it does not (and cannot) allege that it is a direct competitor with Lifeway, which is a legal requirement for maintaining such an action. It is well-settled in the Seventh Circuit that, to have standing, a Lanham Act plaintiff must be a "direct" competitor of the defendant, meaning "that it competes at the same *level* of business as the defendant." *Medallion Prods., Inc. v. McAlister*, No. 06 C 2597, 2008 WL 5046055, at *5 (N.D. Ill. Nov. 20, 2008)[2] (Darrah, J.) (emphasis added), citing *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993).

In *Medallion Products*, the Court found no standing when, as here, plaintiff tries to sue a customer downstream in the supply chain. *Id.* at *5. In that case, a company that sold pet stain removal products to distributors lacked standing to sue one of those distributors because the parties did not compete at the same *level* of distribution. *Id.* Courts in the Northern District of Illinois consistently dismiss false advertising claims under Rule 12(b)(6) that do not allege direct competition at the same distribution level:

- Manufacturer of material used to make sapphire crystals lacked standing to sue manufacturer of sapphire crystals, the end product. *Emerging Mat'l*

---

[2] Copies of non-published cases are attached hereto as Exhibit B.

*Techs., Inc. v. Rubicon Tech., Inc.*, No. 09 C 3903, 2009 WL 506349, at *3-4 (N.D. Ill. Dec. 14, 2009) (granting Rule 12(b)(6) motion).

• Designer of pet clothing lacked standing to sue retailers and manufacturers of pet clothing. *Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 WL 2873202, at *5 (N.D. Ill. Oct. 5, 2006) (granting Rule 12(b)(6) motion).

• Seller of cell phone services lacked standing to sue supplier of cell phone minutes to cell phone service providers. *Platinumtel Communications, LLC v. Zefcom, LLC*, No. 08-cv-1062, 2008 WL 5423606, at *6-7 (N.D. Ill. Dec. 30, 2008) (granting Rule 12(b)(6) motion).

• Customized computer retailer lacked standing to sue developer of internet businesses and a computer and electronic wholesaler, nether of which sold computer products to consumers. *Goodloe v. Nat'l Wholesale Co.*, No. 03 C 7176, 2004 WL 1631728, at *11-12 (N.D. Ill. July 19, 2004) (granting Rule 12(b)(6) motion).[3]

Here, none of the plaintiffs have alleged – nor can they allege – that they directly compete with Lifeway. Instead, they allege that Danisco is an upstream supplier of probiotics to Lifeway, who sells kefir. (Compl. ¶ 8 (Danisco has "long been a world leader in food ingredients"), ¶ 9 ("Danisco markets and sells a variety of premium probiotic[s]"), ¶ 13 (Danisco has a "reputation as a leading probiotic manufacturer"), ¶ 15 (Danisco sells "ingredients for the industrial manufacture of foodstuffs"), ¶ 22 ("Lifeway is in the business of selling probiotic food products, particularly kefir").) So Lifeway is a customer of Danisco, not a competitor.

Danisco lacks legal standing to sue Lifeway because the false advertising standard under the Lanham Act, the IUDTPA, and the ICFA are the same under each of those claims. *See Platinumtel*, 2008 WL 5423606, at *8 (dismissing Lanham Act, ICFA, IUDTPA claims for false advertising because claims are governed by same standard and must rise or fall together).

---

[3] While Lifeway moves to dismiss Danisco's false advertising claims under Rule 12(b)(6), it alternatively moves to dismiss under Rule 12(b)(1) because a lack of standing equates to a lack of subject matter jurisdiction. *See Prasco, LLC v. Medicis Pharma. Corp.*, 537 F.3d 1329, 1335-36 (Fed. Cir. 2008) (explaining that standing is required for court to have subject matter jurisdiction).

Therefore, the Court should dismiss all three of Danisco's false advertising claims for failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).

### III. Danisco Also Fails To Plead Its False Advertising Claims With The Particularity Required By Rule 9(b)

Even if Danisco had standing to bring its false advertising claims, which it does not, those claims could not stand for the separate and independent reason that Danisco fails to plead them with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Danisco's false advertising claims under the Lanham Act, IUDTPA, and ICFA are based on alleged misrepresentations. (*See* Compl. ¶¶ 34, 41.) They, therefore, sound in fraud and must be pled with particularity under Rule 9(b). *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006). Under Rule 9(b), a complaint must provide the specifics about any alleged misrepresentation, including "the identify of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 849 (N.D. Ill. 2008).

Danisco fails to plead the requisite particularity because it does not allege where the three challenged statements listed in paragraph 27 of the complaint were published, the media of publication (e.g., tv, radio, packaging, magazine, website, billboard), who published them, when they were published, or who received them. (*See* Compl. ¶ 27.) On that additional basis alone, the Court should dismiss Danisco's false advertising claims under the Lanham Act, the IUDTPA, and the ICFA.

### IV. Danisco Fails To State A Claim For Trademark Infringement

#### A. The First-Sale Doctrine Allows One To Use Another's Trademark To Resell A Lawfully Purchased Trademarked Good

The "first sale" doctrine bars Danisco's trademark infringement claims because when Danisco sold trademarked probiotics to Lifeway for use in kefir, it conferred upon Lifeway the right to use those goods' trademarked names to identify them as ingredients in Lifeway Kefir. That doctrine, also called the "exhaustion doctrine," provides that "[o]nce a trademark owner sells his product, the buyer may resell the product under the original mark without incurring any trademark liability." *NEC Electronics, Inc. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987); *see also Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) ("Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition"); *McCarthy on Trademarks and Unfair Comp.* § 25:41 (4th ed.).

As this Court has held, "defendant's right to resell a genuine branded item in unchanged form necessarily carries with it the right to advertise to others that it is selling those branded products, so long as such advertising does not mislead customers into mistakenly believing that defendant is an agent or an 'authorized distributor' of plaintiff." *Quill Corp. v. NADA Scientific Ltd.*, No. 97 C 7461, 1998 WL 295502, at *3 (N.D. Ill. May 31, 1998). Trademark law does not govern resale of trademarked goods because "trademark law is designed to prevent sellers from confusing or deceiving customers about the origin or make of a product, which confusion does not exist when a genuine article bearing a true mark is sold." *NEC Electronics*, 810 F.2d at 1509.

The first sale doctrine applies with full force when, as here, the trademarked product is a component ingredient in the accused infringer's final, composite product. *See Prestonettes, Inc. v. Coty*, 264 U.S. 359, 351 (1927) (holding buyer of trademarked product has right to use trademarked name to identify it as ingredient in buyer's end product). Thus, the owner of the famous BUMBLE BEE trademark could not enjoin a tuna salad maker from truthfully

advertising that its tuna salad was "Made with Bumble Bee Tuna." *Bumble Bee Seafoods, L.L.C. v. UFS Indus., Inc.*, No. 04 Civ. 2105(SHS), 2004 WL 1637017, at *2-8 (S.D.N.Y. July 20, 2004).

Courts in this district and beyond correctly apply the first sale doctrine to dismiss trademark claims where, as here, plaintiff alleges that defendant used the trademarks to resell the plaintiff's lawfully-acquired product. *E.g.*, *Quill*, 1998 WL 295502, at *2-4 (grant Rule 12(b)(6) motion to dismiss where "first sale" doctrine barred trademark infringement claims under Lanham Act, IUDTPA, and ICFA); *Food Sciences Corp. v. Nagler*, No. 09-1798, 2010 WL 1186203, at * 7-9 (D.N.J. Mar. 22, 2010) (grant motion to dismiss based upon first sale doctrine).

### B. The First-Sale Doctrine Bars Danisco's Trademark Infringement Claims

According to Danisco, Lifeway infringed Danisco's trademarks under the Lanham Act, the IUDTPA, and the ICFA because its allegedly "unauthorized uses of the HOWARU, NCFM, and HN019 marks in connection with directly competing goods is likely to cause confusion, mistake, or to deceive the consuming public and trade into believing that [Lifeway's] products have been manufactured, marketed, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with [Danisco]." (Compl. ¶ 35, 41.) But Danisco's trademark claims fail because it admits that it sold Lifeway the very NCFM, HN019, or HOWARU probiotic strains contained in Lifeway Kefir.[4] (*See id.* ¶ 25.) Therefore, as a matter of law, the first sale doctrine gives Lifeway the undeniable right to use those trademarked names to truthfully notify the public that they are ingredients in Lifeway Kefir. *See Quill*, 1998 WL 295502, at *2-3.

Danisco does not plausibly allege, as indeed it cannot, that Lifeway held itself out as an agent or authorized distributor of Danisco, that the NCFM or HN019 ingredients in Lifeway

---

[4] Additionally, Danisco's infringement allegations regarding the HOWARU trademark are false and should be dismissed because Lifeway has never used that trademark.

Kefir are not genuine, or that any other circumstances exist that might overcome the first-sale protection enjoyed by Lifeway. (*See* **Ex. A** (Lifeway Kefir packaging showing no mention that Lifeway is an authorized distributor of Danisco)); *see also Quill*, 1998 WL 295502, at *3 (recognizing first-sale rule may not apply if goods are not genuine or if accused infringer holds itself out as "authorized distributor" of plaintiff); *see also Australian Gold, Inc. v. Hatfield*, 436 F.3d 1128, 1240-41 (10th Cir. 2006) (first-sale rule did not apply because defendant falsely held itself out on Internet sites as authorized retail dealer).

Also, Danisco's conclusory "likelihood of confusion" allegation – which is the test to determine trademark infringement – is of no import. (*See* Compl. ¶ 35.) That is because when the correct trademark is used to describe a component of an end product, there can be no likelihood of confusion and thus no trademark infringement; that is the essence of the first sale doctrine. *See NEC Electronics*, 810 F.2d at 1509. Using the correct trademark correctly identifies the trademarked good's true source. *See id.*; *see also Sebastian*, 53 F.3d at 1075 (the first-sale rule ensures "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer").

Thus, the first-sale doctrine completely bars all of Danisco's trademark infringement claims under the Lanham Act, the IUDTPA, and the ICFA. *See Quill*, 1998 WL 295502, at *2-4 (dismissing trademark claims under Lanham Act, IUDTPA, and ICFA because same standard applies to all three). The Court should dismiss all of Danisco's trademark claims accordingly.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the complaint with prejudice.

Dated: October 11, 2011 Respectfully submitted,

   s/ Richard N. Kessler
Richard N. Kessler (#6183140)
David B. Cupar
   (admission application forthcoming)
Matthew J. Cavanagh
MCDONALD HOPKINS LLC
300 N. LaSalle Street
Suite 2100
Chicago, IL 60654
t 312.280.0111
f 312.280.8232
*rkessler@mcdonaldhopkins.com*
*dcupar@mcdonaldhopkins.com*
*mcavanagh@mcdonaldhopkins.com*

*Counsel for Lifeway Foods, Inc.*

<u>Certificate Of Service</u>

      I hereby certify that on October 11, 2011, a copy of the foregoing <u>Lifeway Foods, Inc.'s Motion To Dismiss</u> was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

                                                                                                        s/ Richard N. Kessler
                                                                                                   *Counsel for Lifeway Foods, Inc.*

{2957320:2}